UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| CYNTHIA A. DZIURGOT FARNSWORTH | : | CASE NO. 08-42577-JBR |
| DEBTOR | : | |

**MEMORANDUM OF DECISION OF MOTION TO COMPEL COMPLIANCE WITH AUTOMATIC STAY**

This matter came before the Court for hearing on the Debtor's Motion to Compel Compliance with Automatic Stay [#31] and response thereto [#36]. For the reasons set forth herein, the Court will defer taking any action on the Motion, pending a hearing on an Order to Show Cause, which the Court has issued contemporaneously herewith.

**FACTS**

The Debtor, an attorney and real estate broker, and her former husband, John Farnsworth, have been engaged in a divorce proceeding that was so acrimonious that it took over eleven years and resulted in a judgment of over $750,000 against the Debtor. In granting the divorce, the Probate and Family Court also included in the judgment $100,000 in legal fees "for frustrating the progress of this divorce ... by the moving of assets and failure to comply with discovery and prior orders of this Court." (Judgment of Divorce Nisi, attached as Exhibit A to the Debtor's motion). After the divorce became absolute, the Debtor filed a bankruptcy petition in the Southern District of Florida on April 7, 2008. On July 22, 2008, the Florida bankruptcy court dismissed the case. On August 4, 2008 the Debtor's ex-husband filed a complaint, in the Probate and Family Court, against the Debtor, individually and as trustee of Na-Mor Inc. Realty Trust, and her brother, Robert Dziurgot, individually and in his capacity as trustee of Elam Real Estate Trust, to collect the judgment. The complaint alleges the Debtor fraudulently transferred

properties and seeks to avoid those transfers. It also alleges that the Debtor and her brother engaged in a conspiracy to place her assets beyond her ex-husband's reach. In addition to the complaint, the ex-husband filed a motion for appointment of receiver of Elam Real Estate Trust.

According to the Debtor's Motion to Compel Compliance, the Debtor transferred property at 799 Mt. Elam Rd., Fitchburg, MA to the Elam Real Estate Trust in 2000. She is, however, a 20% beneficiary of the Elam Real Estate Trust. The Debtor alleges she transferred realty at 75 Walnut Street, Clinton, MA to Na-Mor Inc. Realty Trust in 1996. She claims no beneficial interest in Na-Mor. Inc. Realty Trust. She also claims that the "ultimate owner" of 75 Walnut Street, however, is Honeycliff, Ltd., of which she is the 40% owner.[1]

In addition to the foregoing property, Na-Mor, Inc. is a corporation which the Debtor previously owned. It holds, and has since 1988 held, title to *77* Walnut Street. It is unclear if the Debtor previously held title to this property. She alleges that Na-Mor, Inc. is now owned by CD Holdings, which is owned by Honeycliff, Ltd, of which the Debtor is a 40% owner. The ex-husband alleges Na-Mor, Inc. was dissolved in 1990.

On August 8, 2008 the Debtor resigned as trustee of Na-Mor Inc. Realty Trust. The Debtor's brother, Robert Dzuirgot, is the current trustee.

On August 11, 2008 the Debtor filed her present Chapter 11 bankruptcy without schedules and statements. The following day the Probate Court granted the ex-husband's motion

---

[1] As the Special Master, appointed in the parties's divorce proceeding noted, the Debtor began investing in real estate prior to the marriage and formed CD Holdings, Inc. and several subsidiary corporations to hold and manage the properties. Her acquisition of property through several different companies continued after the parties married. When they separated in 1995, the Debtor transferred many of the properties to the various subsidiaries of CD Holdings, Inc., which itself was merged with Honeycliff, Ltd.

2

for appointment of receiver for Elam Real Estate Trust.

On September 8, 2008 the ex-husband filed and obtained what he describes as a real estate attachment "against Na-Mor and Elam Real Estate Trust." (Response at ¶ 4). The Debtor agrees that the ex parte attachment sought to attach the "the real estate of Robert Dzuirgot, as trustee of the Elam Real Estate Trust and Na-Mor Realty Trust." (Motion to Compel Compliance at ¶ 18). The Writ of Attachment is considerably broader than what was sought as it covers all real estate owned by the Debtor or her brother anywhere in Worcester County, up to $1 million.

On September 8, 2008, the Debtor filed her Schedules A-H and disclosed a 20% beneficial interest in Elam Real Estate Trust and 4 shares of Honeycliff, Ltd. Stock. On September 10, 2008 the Court entered an order extending the automatic stay enters.

The Debtor has filed a motion alleging that her ex-husband and his attorneys have violated the automatic stay and seeks sanctions against them. Specifically the Debtor alleges that

> Farnsworth's continued litigation against the Debtor's brother, Robert Dziurgot, both individually and in his capacity as trustee of the Elam Real Estate Trust, the appointment of a receiver for the Elam Real Estate Trust, the ex parte motion to attach, and the writ of attachment are acts to collect or recover a pre-petition judgment....(Motion to Compel Compliance at ¶ 31).

POSITION OF THE PARTIES

The Debtor complains that each of the following violate the automatic stay: continued litigation against the Debtor's brother, Robert Dziurgot, both individually and in his capacity as trustee of the Elam Real Estate Trust; the appointment of a receiver for the Elam Real Estate

3

Trust; the ex parte motion to attach; and the writ of attachment.  The ex-husband's response is threefold: he stopped all action against the Debtor *individually*, taking action against non-debtor entities doesn't violate the automatic stay, and the Debtor didn't disclose her interests in either trust in her "initial petition."

DISCUSSION

Once a petition has been filed, section 362(a)(6) forbids "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title...."  Courts have repeatedly said the automatic stay is broad and designed to give the debtor some breathing room and prevent a race among creditors to gain the assets.  *Superior Paint Mfg. v. Lopez-Soto (In re Lopez-Soto),* 764 F.2d 23, 27 (1st Cir.1985).  Actions taken in violation of the automatic stay are void *ab initio In re Soares*, 107 F.3d 969 (1st Cir. 1997).  This includes "acts taken undertaken in the course of carrying out the core judicial function ... if essayed after bankruptcy filing...." *Id.* at 974.  Equitable considerations may justify granting relief from the stay retroactively. *Id.* at 969.

Knowledge of the bankruptcy is irrelevant to finding a violation although it is relevant to the issue of willfulness and thus sanctions.  11 U.S.C. § 362(k).  Generally speaking, a violation will be found "willful" if the creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case. *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265, 268-69 (1st Cir.1999).

While the automatic stay is broad, courts generally do not apply it to actions taken against co-defendants, at least not until the debtor asks for and obtains an injunction under section 105(a) to bring co-defendants within the ambit of the automatic stay.  "The statute is

clear. The stay applies only to the debtor and not to co-defendants. *Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 4 (1st Cir.1983) (holding that the protections of the automatic stay apply only to actions against the debtor), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983)...." *In re Christakis,* 291 B.R. 9, 17 (Bankr. D. Mass.2003). Nevertheless, fraudulent conveyance causes of action are themselves interests in property of the estate, which "the Trustee should at least be allowed the opportunity to recover the equity for creditors." *In re Ciccone.* 71 B.R. 4, 5 (Bankr.D.R.I. 1994). "[N]o creditor has individual avoidance rights after the petition filing. Bankruptcy being a collective proceeding for the benefit of all creditors, avoidance rights belong only to the estate representative; upon their exercise the property recovered becomes part of the bankruptcy estate." *Mi-Lor Corp. V. Gottsegen (In re Mi-Lor Corp.),* 233 B.R. 608, 619 (Bankr. D.Mass.1999).

Although the Court could apply the above principles to the instant action, the Court has a deeper concern than parsing what actions may or may not have violated the automatic stay. The Court is aware of the Debtor's behavior of transferring properties and protracting the divorce proceedings as those matters are set forth in the Master's Report which the Debtor herself provided to the Court. The Court has also reviewed the transcript of the hearing on the Motion to Dismiss the Florida bankruptcy and is aware of the court's statements as to the inconsistencies in the schedules and statement in that case, including the Debtor's attempt to characterize a loan from her mother as secured. Indeed this Court is concerned about the accuracy and completeness of the schedules filed in this case as it failed to disclose the Debtor's legal interest as co-trustee in the in Robert St. Realty Trust and the fact that subsequent to the petition date, she and her brother, as co-trustees, transferred the property to the Debtor's brother individually.

As with the non-disclosures and inaccurate disclosures in the Florida bankruptcy, the Debtor does not seem to appreciate the need for accuracy and completeness.

There is no creditors' committee and no trustee has been appointed not has the ex-husband sought permission to remove the probate court proceeding and continue the litigation on behalf of the bankruptcy estate. In addition the Court notes that the overwhelming percent of the unsecured debt is held by the ex-husband, followed by the Debtor's mother. Approximately $830,000 of the $988,000 is held by these two individuals. Moreover the Debtor has not filed Schedules I and J so it is not possible to determine whether this case is a viable Chapter 11 proceeding. The Court will not permit the Debtor to use this forum as another venue to delay meeting her obligations. Consequently the Court will continue the Motion to Compel Compliance and will also schedule a show cause hearing to determine if this case should be dismissed, converted to Chapter 7, or a Chapter 11 Trustee appointed. The Debtor will be ordered to file Schedules I and J within 3 days of the date of this Order.

A separate Order will issue.

Dated: October 28, 2008                    _____
                                                    Joel B. Rosenthal
                                                    United States Bankruptcy Judge