UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

IN RE                                              )
                                                   )    CHAPTER 11
CYNTHIA A. DZIURGOT- FARNSWORTH,                   )
                                                   )    CASE NO. 08-42577-JBR
DEBTOR                                             )
                                                   )
_____)

MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO STAY COURT'S
ORDER OF DISMISSAL PENDING APPEAL

This Debtor previously came before the Court for a hearing on the Court's order to show cause why the case should not be dismissed, converted to one under Chapter 7, or why a Chapter 11 trustee should not be appointed. At the hearing, an additional allegation was raised by the United States Trustee ("UST") and the Debtor's former husband's attorney ("former husband") that heightened the Court's already serious concerns about the appropriateness of the Debtor's bankruptcy filing and her actions in connection therewith. Specifically, the UST and the former husband alleged that a Massachusetts corporation, Na-Mor, which is wholly owned by a second corporation, CD Holdings, which is wholly owned by the Debtor, granted a mortgage in its real estate in the amount of $1,210,000.00 on October 31, 2008, two months and twenty days after the Debtor's bankruptcy filing. It was further alleged that over $750,000 in cash proceeds were derived from this mortgage transaction. The Court dismissed the Debtor's case for the following reasons: (1) the Court does not believe that the Debtor has been forthright in her pleadings; (2) the Court believes that the Debtor is seeking to exploit the Bankruptcy process to prolong what is essentially a two-party dispute with her ex-husband[1]; (3) the bankruptcy court in the Southern

---

[1] The husband is scheduled as holding a claim in the amount of $750,966 while the remaining claims total a mere $236,791, $79,500 of which is held by the Debtor's mother. *See* Docket # 22.

District of Florida had serious questions about the accuracy of the bankruptcy filing and the Debtor's credibility[2]; and (4) among other suspicious actions, the Debtor failed to schedule an asset that is property of the estate under 11 U.S.C. § 541, the Robert Street Realty Trust, for which she was trustee.

The Debtor has appealed this Court's order of dismissal, and now comes before the Court on her emergency motion to stay the Court's order of dismissal pending appeal. The Debtor's former husband opposes the motion. Federal Rule of Bankruptcy Procedure 8005 provides that the bankruptcy court "may suspend or order continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." It is within the sound discretion of the bankruptcy court to decide whether or not a stay should be granted under Bankruptcy Rule 8005. *See In re Alfaro*, 221 B.R. 927, 930 (B.A.P. 1st Cir. 1998). The Debtor bears the burden to show: "(1) the likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to other parties from granting the stay, and (4) service to the public interest from granting the stay." *See, e.g., Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1067 (5th Cir. 1986). For the following reasons the Court will deny the Debtor's motion.

First, the Debtor argues that she will suffer irreparable harm if the stay is not granted because she will be incarcerated due to her alleged "inability" to satisfy the Probate Court's November 18, 2008 contempt order requiring her to pay her former husband $500,000 by November 28, 2008. At first glance this argument seems meritorious, but there are several vital facts that the Debtor conveniently fails to mention. The divorce litigation leading up to the November 18, 2008 contempt order has been pending in the Probate Court for over *eleven* years;

---

[2] Judge Raymond Ray went so far as to say that the case may warrant referral to the United States Attorney for criminal prosecution for bankruptcy fraud. *See* Docket # 19.

2

the litigation between the parties has been prolonged and contentious. Moreover, this was not the first such order, as the Probate Court previously issued an order in January of 2008 requiring the Debtor to pay her former husband. Implicit in the Probate Court's orders to pay the Debtor's husband is a finding that the Debtor had the financial capability to do so. *See* M.G.L. ch. 208, § 34 ("In determining the amount of alimony . . . or in the fixing the nature and value of the property, if any, to be assigned, the court, . . . *shall* consider . . . *amount and sources of income*."). If any court is most familiar with the Debtor's asset holdings and her ability to pay, it is the court that has lived with the Debtor's divorce proceedings for over eleven years. The Debtor appealed the Probate Court's initial January 2008 order to pay her former husband. The Debtor then filed bankruptcy, first in Florida, then in this Court. In his opposition to the Debtor's motion, the former husband informs the Court that the Debtor has also appealed the Probate Court's order of November 18, 2008 and has sought a stay of that order. This Court may not act as an appellate court to review state court orders. This Court will not substitute its judgment for that of the state court or otherwise interfere with that process. The Debtor will not suffer irreparable harm if the stay is not granted.

Next, the Court turns to substantial harm to other parties that will result if the stay is granted. Granting a stay will actually harm other creditors as the bankruptcy filing was motivated to frustrate the efforts of the Debtor's primary creditor, her former husband, rather than to provide the Debtor with a fresh start. Furthermore, granting a stay is likely to harm the Debtor's remaining creditors as the Debtor has undisputedly conveyed and encumbered assets during the bankruptcy case without the Court's permission. As the bankruptcy filing did not stop the Debtor from playing her "shell game" of transferring and encumbering assets held in the names of various trusts and corporate entities, a stay of the dismissal is likely to encourage the Debtor to continue such activity.

3

The Debtor has not demonstrated a substantial likelihood of success on the merits. First, dismissal was appropriate because the Debtor's actions, including filing the bankruptcy petition in Florida on the eve of a contempt hearing, demonstrate that the Debtor filed both bankruptcies to further prolong the eleven year-old divorce litigation to avoid paying the $750,966 judgment owed to her former husband. The Court will not allow the Debtor to use this venue to prolong resolution of her two-party dispute. *See, e.g., In re SB Properties, Inc.*, 185 B.R. 206, 208-09 (E.D. Pa. 1995). Debtor's counsel's own statement highlights that this is purely a two-party dispute: "if the Court were to dismiss the case, then we would have a *one-creditor* run on the assets." Finally, the two-party dispute is further illustrated by the Debtor's statement of financial affairs which lists the divorce and supplementary process actions, both brought by the former husband, as the only proceedings that the Debtor has been involved in within one year of the bankruptcy filing. *See* Docket # 24.

The Court believes that the Debtor has been untruthful on her schedules in both this Court and the bankruptcy court in the Southern District of Florida and has been involved in suspicious post-petition transactions. The Court also continues to be troubled by the gross inconsistencies found in the Debtor's filings. For example, the Debtor's Schedules I & J, filed in this Court on November 3, 2008, list monthly net income in the amount of $8,357, while the Debtor's Probate Court financial statement, filed fifteen days later on November 18, 2008, lists monthly net income in the amount of $362.15.[3] There is also a discrepancy as to what the Debtor has paid bankruptcy counsel, as the Debtor's statement of financial affairs lists $15,000 as paid to bankruptcy counsel, while the Probate Court financial statement lists a "personal loan" from her brother "to pay bankruptcy counsel" in the amount of $22,000. Debtor's counsel

---

[3] This figure is arrived at by multiplying the listed weekly net income of $84.22 by 4.3.

implicitly conceded that there may be improprieties when he stated that "perhaps a third party, an independent voice should be looking at this" at the dismissal hearing.

Finally, the Court believes that the Debtor's income is insufficient to fund a Chapter 11 plan. The Debtor filed Schedules I & J twenty-three days ago listing monthly net income in the amount of $8,357, however, the Debtor admits that the average income for the preceding 12 months "is significantly lower." Apparently, it only took fifteen days for the Debtor's income to plummet back down to this "significantly lower" level, as the Probate Court financial statement curiously indicates that the Debtor's monthly net income has fallen to $362.15. The Debtor's income history overwhelmingly supports the conclusion that the Debtor's ability to fund a Chapter 11 plan is extremely unlikely and at best speculative.

Finally, the public interest lies in not permitting this misuse of the process. The Court believes that Debtor is seeking to stay dismissal of her bankruptcy case in order to benefit from the automatic stay and as a motion to stay the Probate Court's November 18, 2008 order has been filed in state court, this Court will not interfere with the state court process.

For the foregoing reasons, the Debtor's motion to stay the Court's order of dismissal pending appeal is hereby DENIED.

A separate order will issue.

Dated: November 26, 2008

By the Court,

Joel B. Rosenthal
United States Bankruptcy Judge

5